UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GREGORY A. FRASER,<br><br>                  Plaintiff,<br><br>-against-<br><br>FIDUCIARY TRUST COMPANY<br>INTERNATIONAL, FRANKLIN RESOURCES<br>INC., MICHAEL MATERASSO, JEREMY H.<br>BIGGS, WILLIAM Y. YUN, CHARLES B.<br>JOHNSON, ANNE M. TATLOCK, GREGORY E.<br>JOHNSON AND MARTIN L. FLANAGAN,<br><br>               Defendants. | **ECF CASE**<br><br>CIVIL ACTION NO.: 04 CV 06958<br>(PAC)(GWG) |

## MEMORANDUM OF LAW IN SUPPORT
## OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

**LITTLER MENDELSON, P.C.**
885 Third Avenue, 16th Floor
New York, New York 10022.4834
212.583.9600

Attorneys for Defendants

*Of Counsel:*
Christina L. Feege, Esq.
A. Michael Weber, Esq.

# TABLE OF AUTHORITIES

**Page**

## CASES

*Acito v. IMCERA Group, Inc.,*
47 F.3d 47, 52 (2d Cir. 1995) ................................................................. 24, 25

*Allen v. Stewart Enterprises, Inc.,*
2004 SOX 60-62 .................................................................................... 8, 9

*America, Inc. v. Promethean Asset Mgmt. LLC,*
223 F. Supp. 2d 435, 442 (S.D.N.Y 2001)) ........................................... 14

*Anderson v. Electronic Data Sys. Corp.,*
11 F.3d 1311, 1314-15 (5th Cir.) .......................................................... 10

*Bechtel Constr. Co. v. Sec'y of Labor,*
50 F.3d 926, 931 (11th Cir. 1995) ........................................................ 8, 9

*Bennett v. United States Trust Co. of New York,*
770 F.2d 308, 313 (2d Cir. 1985) .......................................................... 19

*Blue Chip Stamps v. Manor Drug Stores,*
421 U.S. 723, 737-38 (1975) ................................................................. 15, 16

*Bona v. Barasch et al.,*
C.A. No. 1-CV-2289, 2003 WL 1395932 (Mar. 20, 2003) ................... 28

*Bond Opportunity Fund v. Unilab Corp.,*
2003 WL 21058251, at *4 (S.D.N.Y. May 12, 2003) ........................... 24

*Borst v. Chevron Corp.,*
36 F.3d 1308, 1323-24 (5th Cir. 1994), *cert. denied*, 115 S.Ct. 1699 (1995) .............. 27

*Carter-Wallace, Inc. Sec. Litig.,*
1999 WL 102971 (S.D.N.Y. 1999) ........................................................ 24, 25

*Castellano v. Young & Rubicam, Inc.,*
257 F.3d 171, 186 (2d Cir. 2001) .......................................................... 18

*Cendant Corp. Sec. Litig.,*
76 F. Supp. 2d. 539, 545 (D.N.J. 1999) ................................................. 16

*Collins v. Beazer Homes USA, Inc.,*
334 F. Supp. 2d, 1365, 1376 (N.D. Ga. 2004);49 U.S.C. § 42121
(b)(2)(B)(iii) ........................................................................................... 3

*Connolly v. Havens,*
763 F. Supp. 6, 9 (S.D.N.Y. 1991) ........................................................ 3

*Cooper v. Parsky,*
140 F.3d 433, 440 (2d Cir. 1998) .......................................................... 2

*Cox v. Keystone Carbon Co.,*
894 F.2d 647, 649-50 (3d Cir. 1990), cert. denied, 498 U.S. 811 (1990) ................. 27

**TABLE OF AUTHORITIES**
(continued)

Page

*Cross Media Marketing Corp. Sec. Litig.*,
    314 F. Supp. 2d 256, 261 (S.D.N.Y. 2004) ..................................................... 24

*Daisy Group, Ltd. v. Newport News, Inc.*,
    999 F. Supp. 548, 550 (S.D.N.Y. 1998) ......................................................... 29

*Diamond Multimedia Systems, Inc. v. Superior Court*,
    968 P.2d 539, 550 (Cal. 1999) ........................................................................ 18

*Diduck v. Kaszycki & Sons Contractors, Inc.*,
    737 F. Supp. 808, 811 (S.D.N.Y. 1990) ......................................................... 28

*Dura Pharmaceuticals, Inc. v. Broudo*,
    125 S.Ct. 1627, 1631, 544 U.S. __, No. 03-932 (April 19, 2005) ................. 19, 20, 21

*Flag Telecom Holdings, Ltd. Sec. Litig.*,
    308 F. Supp. 2d 249, 270 (S.D.N.Y. 2004) ................................................... 25

*Gilmore v. Parametric Tech. Corp.*,
    2003-SOX-00001 (February 6, 2003) ............................................................. 4

*Griffin v. McNiff*,
    744 F. Supp. 1237, 1253 (S.D.N.Y. 1990), *aff'd*,
    996 F.2d 303 (2d Cir. 1993) ........................................................................... 19

*Gross v. Diversified Mortgage Investors*,
    431 F. Supp. 1080, 1088 (S.D.N.Y. 1977) ..................................................... 15

*GTFM, LLC v. TKN Sales, Inc.*,
    257 F.3d 235, 241 (2d Cir. 2001) ................................................................... 29

*Hashimoto v. Bank of Hawaii*,
    999 F.2d 408, 411 (9th Cir. 1993) .................................................................. 10

*Hirsch v. Arthur Andersen & Co.*,
    72 F.3d 1085, 1095 (2d Cir. 1995) .................................................................. 19

*Hopkins v. ATK Tactical Systems*,
    2004 SOX 00019 (May 27, 2004) ..................................................................... 3

*Jones v. Intelli-Check, Inc.*,
    274 F. Supp.2d 615, 633 (D.N.J. 2003) .......................................................... 19

*Jordan (Bermuda) Inv. Co. v. Hunter Green Invs. Ltd.*,
    205 F. Supp. 2d 243, 253 (S.D.N.Y. 2002) ................................................... 24

*Katsaros v. Cody*,
    744 F.2d 270, 278-79 (2d Cir. 1984) ............................................................. 28

*Lehman v. Nakshian*,
    453 U.S. 156, 164 (1981) ................................................................................ 30

*Lipton v. Pathogenesis Corp.*,
    284 F.3d 1027 (9th Cir. 2002) ........................................................................ 26

**TABLE OF AUTHORITIES**
(continued)

Page

*Lockheed Corp. v. Spink,*
517 U.S. 882, 890 (1996) ............................................................................ 12

*Merrill Lynch Tyco Research Sec. Litig.,* 2004 WL 305809, *2 (S.D.N.Y.
2004)* ..................................................................................................... 20, 21

*Mertens vs. Hewitt Assoc.,*
508 U.S. 48, 255 (1993) ......................................................................... 12, 28

*Minkina v. Affiliated Physician's Group,*
2005 SOX 00019 ........................................................................................... 3

*Murray v. TXU Corp.,*
2005 U.S. Dist. LEXIS 10945 (N.D. Tex. June 7, 2005.) ................................. 29, 30

*Newman v. Warnaco Group, Inc.,*
335 F.3d 187, 193 (2d Cir. 2003) ................................................................. 27

*Nicholaou v. Horizon Media Inc.,*
402 F.2d 325, 329 (2d Cir. 2005) ................................................................. 11

*Novak v. Kabaks,*
126 F.3d 300, 306 (2nd Cir. 2000) ......................................................... 14, 24

*Oxford Health Plans, Inc.,*
187 F.R.D. 133 (S.D.N.Y. 1999) .................................................................. 25

*Parnes v. Gateway 2000, Inc.,*
122 F.3d 539 (8th Cir. 1997) ....................................................................... 15

*Pereira v. Cogan,*
C.A. No. 00-CV-619, 2002 WL 989460 (S.D.N.Y. May 10, 2002) ........................ 28

*Raff v. Travelers Insurance Co.,*
C.A. No. 7673 (BSJ), 1996 WL 154171 (S.D.N.Y. Apr. 30, 1996)........................ 28

*Resner v. ARC Mills, Inc.,*
C.A. No. 95-Civ. 2924 (1996 WL 554571 (S.D.N.Y. Sept. 30, 1996) ..................... 28

*Robinson v. Metro-North Commuter R.R.,*
267 F.3d 147 (2d Cir. 2001) ........................................................................ 30

*Rombach v. Chang,*
355 F.3d 164 (2d Cir. 2004) ................................................................... 21, 22

*Sabetay v. Sterling Drug, Inc.,*
506 N.E.2d 919, 922-923 (N.Y. 1987) ........................................................... 13

*San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.,*
75 F.3d 801, 813 (2d Cir. 1996) .................................................................. 24

*Steed Finance LDC v. Nomura Sec. Int'l.,*
2004 WL 2072536, *8 (S.D.N.Y. 2004) ........................................................ 19

*Sullivan v. LTV Aerospace and Defense Co.,*
82 F.3d 1251 (2d Cir. 1995) ........................................................................ 27

**TABLE OF AUTHORITIES**
(continued)

Page

*Tomayo v. City of New York,*
  2004 WL 725836, *3 (S.D.N.Y. March 31, 2004) ............................................... 13

*Tuttle v. Johnson Controls Battery Division,*
  2004 SOX 0076 ..................................................................................... 3

*Vantive Corp. Sec. Litig.,*
  283 F.3d 1079, 1093-1096 (9th Cir. 2002) ..................................................... 26

*Vincinanzo v. Brunschwig & Fils, Inc.,*
  739 F. Supp. 882 (S.D.N.Y. 1990) ............................................................... 28

*Wayde S. Lerbs v. Buca Di Beppo, Inc.,*
  2004-SOX-8 .......................................................................................... 8

*Weiner v. McGraw-Hill, Inc.,*
  443 N.E.2d 441 (N.Y. 1982) .................................................................... 13

*WorldCom, Inc. Sec. Litig.,*
  2005 WL 89395, *21 (S.D.N.Y. Jan. 18, 2005) ............................................... 23

**STATUTES**

§ 1132 of ERISA ........................................................................................ 11

§ 25402 of the California Corporations Code ................................................ 14, 18, 26

§§ 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) ............... 14

15 U.S.C. § 78j(b)) .................................................................................... 15

15 U.S.C. § 78u-4(b)(1) ............................................................................... 21

15 U.S.C. § 78u-4(b)(2) ............................................................................... 24

15 U.S.C. § 78u-4(b)(4) ............................................................................... 19

15 U.S.C. § 80b-2(a)(11)(A) .......................................................................... 22

15 U.S.C. § 80b-3a ..................................................................................... 22

18 U.S.C. § 1514A (a)(1) ............................................................................... 3

18 U.S.C. §§ 1341, 1343 ............................................................................... 3

28 U.S.C. § 1658 ....................................................................................... 26

29 U.S.C. § 1002(21)(A) ............................................................................... 12

29 U.S.C. §§ 1104, 1140 ............................................................................. 10,11

ERISA §§ 404 and 510 .............................................................................. 10,11,12

ERISA Section 502, 29 U.S.C. § 1132(a)(3) ....................................................... 28

Investment Advisers Act of 1940,
  15 U.S.C. § 80b-3a(2) ............................................................................... 22

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

Investment Advisers Act of 1940,
    15 U.S.C. § 80b-2(a)(ii) ...................................................................................... 22

Section 806 of SOX, codified at 18 U.S.C. § 1514A .................................................. 3

Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) ................................................. 2

**RULES**

FRCP 12(b)(6) and 9(b) ........................................................................................ 2, 3

Rule 10b-5, 17 C.F.R. § 240.10b-5.................................................................... 2, 14

## PROCEDURAL AND FACTUAL BACKGROUND

Before the Court is the ***third*** iteration of Plaintiff Gregory Fraser's federal court Complaint, which has been dismissed and amended repeatedly since it was originally filed as an administrative complaint in May 2003 with the United States Occupational Safety and Health Agency ("OSHA"). Having been granted two separate opportunities to amend by Judge Berman, who dismissed the bulk of Plaintiff's First Amended Complaint by Decision and Order dated June 23, 2005,[1] it is now beyond dispute that Plaintiff has not, and simply cannot, plead the required elements for almost every claim asserted in his 91-page Second Amended Complaint (the "Complaint").[2] As set forth below, the Court should dismiss the bulk of this oversized pleading for the following reasons:

- Plaintiff's attempt to transform a series of rather run-of-the-mill workplace complaints into actionable whistle-blowing under the Sarbanes-Oxley Act of 2002 ("SOX") and ERISA is inadequate as a matter of law.

  - → Both OSHA and this Court previously found that Plaintiff's standard-fare complaints do not amount to protected activity under SOX, and Judge Berman likewise found that Plaintiff did not engage in any sort of ERISA-based protected activity. This Court should do the same. Despite almost 100 pages of murky factual allegations, **Plaintiff has not articulated a single complaint made during the course of his employment concerning Defendants' employee benefit plans, and nothing that on its face could plausibly be construed as a report of fraudulent business practices.** Indeed, while Plaintiff now claims that he was discharged because he was a corporate whistleblower, at no time did Plaintiff assert that his discharge was in any way, shape or form related to his alleged whistle-blowing activity -- not during his pre-discharge correspondence and meetings, and not during his post-discharge settlement discussions, where he was represented by counsel. This claim of recent invention should be dismissed.

- Plaintiff's claims also suffer from several largely immutable procedural infirmities, such as:

  - → Failure to exhaust required administrative remedies, serious time-bar issues and lack of standing. Even if Plaintiff's claims had substantive merit – which they do not – these flaws require dismissal.

- Finally, as a last ditch attempt at recovery, Plaintiff asserts what he clearly thinks are attention-

---

[1] This decision is referred to herein, "Decision and Order."

[2] Rather than trim the size of his pleadings, as he was specifically ordered to do by Judge Berman, Plaintiff has incorporated by reference every document he submitted in opposition to Defendants' previous motion to dismiss, *and* has created a wholly new, lengthy Exhibit M. To assist the Court in locating relevant documents referred to herein from among Plaintiff's many exhibits, Defendants have attached copies to the Declaration of Christina L. Feege In Support of Motion to Dismiss the Second Amended Complaint (the "Feege Dec.")

grabbing (but ultimately meritless) securities fraud claims.[3]   These claims suffer from multiple defects, each of which independently requires dismissal:

→   Plaintiff fails to allege facts showing that he was a purchaser or seller of Franklin Resources, Inc.'s ("Franklin") shares, which is required to confer standing.

→   Plaintiff is unable to allege -- much less to establish -- loss or transaction causation, because he was granted the shares on which he relies, and cannot show that they either declined in value or that he otherwise suffered any sort of loss as a result of Defendants' alleged fraudulent activity.   To the contrary, Plaintiff's sole "loss" is the capital gains taxes he was required to pay on the profit he made when he sold a portion of these gifted shares.

→   Plaintiff likewise fails to allege facts showing reliance, *scienter* or other indicia of fraudulent intent.

As the above makes clear, Plaintiff's Complaint still suffers from these multiple, serious defects, despite having been amended *seriatim* since last December.   Enough is enough.   At this juncture, it is appropriate and necessary to dismiss all of Plaintiff's claims *with prejudice,* pursuant to FRCP 12(b)(6) and 9(b), except Plaintiff's claims for (1) denial of severance benefits, as asserted under his ERISA-based Third Cause of Action, and (2) timely race and color discrimination claims, meaning those that arose <u>on or after August 28, 2001</u>.   Likewise, because Plaintiff has demanded a jury trial with respect to SOX and ERISA claims – for which no jury right exists – Defendants request that, to the extent these claims survive, the Court strike Plaintiff's jury demand.

## ARGUMENT

## I.   STANDARD OF REVIEW UNDER FRCP 12(B)(6)

Under FRCP 12(b)(6), a motion to dismiss for failure to state a claim shall be granted if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir. 1998).   While the Court is required to accept as true all of the factual allegations in the Complaint, in order to survive a motion to dismiss, those allegations must be sufficient to support each and every material element of Plaintiff's claims.   *See*

---

[3] These claims have been asserted under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) *et. seq.*, Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder, and § 25402 of the California Corporations Code.

*Connolly v. Havens,* 763 F. Supp. 6, 9 (S.D.N.Y. 1991).

Here, despite his lengthy 91-page Complaint and two opportunities to amend his pleadings, Plaintiff still fails to meet this standard. Accordingly, the Court should dismiss Plaintiff's claims pursuant to FRCP 12(b)(6).

## II.  PLAINTIFF'S SOX RETALIATION CLAIMS DO NOT ALLEGE ANY LEGALLY PROTECTED ACTIVITY AND HIS CLAIMS ARE OTHERWISE DEFECTIVE

Section 806 of SOX, codified at 18 U.S.C. § 1514A, provides "whistleblower" protection to employees of publicly traded companies who provide to their employers or investigators information concerning possible violations of federal securities laws or fraud against shareholders.[4]  In this case, *the critical issue is whether Plaintiff's complaints about the way the Company was managing client accounts amount to "protected activity" under SOX.[5]*

They do not. Since its passage three years ago, administrative law and court decisions have consistently made clear that routine workplace complaints such as Plaintiff's *are not* legally protected activity. Instead, in keeping with the statute's legislative purpose, "protected activity is defined under SOX as reporting an employer's conduct which the employee reasonably believes constitutes a violation of the laws and regulations *related to fraud against shareholders.*" *Tuttle v. Johnson Controls Battery Division*, 2004 SOX 0076 (emphasis added). As with any sort of fraud, "an element of intentional deceit that would impact shareholders or investors is implicit." *Id.*; *Minkina v. Affiliated Physician's Group*, 2005 SOX 00019; *Hopkins v. ATK Tactical Systems*, 2004 SOX 00019 (May 27, 2004).

In this case, Plaintiff's claims are notably short on any facts demonstrating that he

---

[4] Accordingly, a plaintiff must plead that "(1) he engaged in protected activity; (2) the employer knew of the protected activity; (3) he suffered an unfavorable personnel action; and (4) circumstances exist to suggest that the protected activity was a contributing factor to the unfavorable action." *Collins v. Beazer Homes USA, Inc.*, 334 F. Supp. 2d, 1365, 1376 (N.D. Ga. 2004);49 U.S.C. § 42121 (b)(2)(B)(iii).
[5] Specifically, the statute states that the employee must *provide to the employer* information relating to alleged violations of 18 U.S.C. §§ 1341, 1343 (fraud by wire, radio or television), 1344 (bank fraud) or 1348 (securities fraud), any rule or regulation of the Securities and Exchange Commission ("SEC"), or any provision of Federal law "relating to fraud against shareholders." 18 U.S.C. § 1514A (a)(1).

contemporaneously communicated anything to his managers indicating that he believed that *fraudulent* conduct was occurring, as opposed to conduct that he personally viewed as negligent, imprudent or misguided. For this reason, and those set forth below, Plaintiff's Fourth Cause of Action must be dismissed.[6]

## A.    First and Fourth Instances

In his First Instance, Plaintiff alleges that, in December 2001,[7] he sent a series of e-mail messages to Jeremy Biggs, Defendant Fiduciary Trust Company International's ("Fiduciary") Chief Investment Officer, complaining that Fiduciary's client accounts had suffered large losses in 2001 that could have been avoided if Michael Rohwetter, an Institutional Fixed Income Portfolio Manager, had heeded Plaintiff's investment recommendations. Cplt. 816-852; a copy of this message has been annexed as Exhibit M to the Complaint and as Exh. 2 to the Feege Dec.[8] Plaintiff raised these same general complaints in a January 7, 2002 "Confidential Memorandum" to Fiduciary's Human Resources Department, which he now characterizes as a "whistleblower complaint" (the "Confidential Memorandum").[9] Along the same lines, Plaintiff's Fourth Instance asserts that Fiduciary failed to follow Plaintiff's investment recommendations, which he voiced in a March 6, 2003 email message addressed to William Yun, Mike Materasso and Edward Eisert. Cplt. 962-1032; Pl. Exh. M; Exh. 4 to the Feege Dec.

As both OSHA and Judge Berman previously found, far from providing information about a violation of federal securities law or reporting fraudulent conduct, Plaintiff's missives to Biggs, Eisert and

---

[6] Plaintiff's Fourth Cause of Action is asserted against the individual managers named in this action (the "Individual Defendants"). As Judge Berman previously found, all SOX claims asserted against these managers must be dismissed because Plaintiff did not name them in the OSHA proceedings and thus, has not exhausted his administrative remedies. See, OSHA Complaint, annexed as Exhibit M to the Second Amended Complaint and Exh. 1 to the Feege Dec.; Decision and Order, pp. 11-12. Plaintiff's amendments have not cured this fatal defect.

[7] Because both the alleged protected activity and the alleged retaliation occurred prior to the passage of SOX, which has no retroactive effect, this claim is time-barred, in addition to being without merit. *See Gilmore v. Parametric Tech. Corp.*, 2003-SOX-00001 (February 6, 2003).

[8] Although Judge Berman ordered Plaintiff to re-paragraph his unwieldy complaint, instead he simply added line numbers. Because Plaintiff's paragraphs are sometimes pages long, we have referred herein to Plaintiff's allegations by their line number(s).

[9] *See* January 7, 2002 "confidential" memorandum, annexed Exhibit M to the Complaint and Exh. 3 to the Feege Dec.

Fiduciary's Human Resources Department did not communicate information regarding potential fraud against shareholders, and thus, cannot be considered protected activity. *See* Decision and Order, p. 17. ("Plaintiff has not sufficiently alleged how identifying Rohwetter as responsible for the 'relatively poor performance' of certain accounts" ... or informing senior management that the Company "failed to balance investment return with risk" because it had not adopted his investment strategy, may be construed as blowing the whistle on corporate fraud or violations of federal law relating to fraud against shareholders.")

Plaintiff has tried to correct this problem, at least as it relates to the Second Instance, by focusing on language contained in bullet-point number four of the Confidential Memorandum, which he claims alleges that Rohwetter asked Plaintiff to conceal and falsify certain actual 2001 year-end performance results in official communications to Fiduciary's clients. Cplt. 2400-2418. Judge Berman previously rejected this effort, and this Court should as well, on the ground that this is a new allegation that was not set forth in Plaintiff's OSHA Complaint, and thus, is barred on timeliness grounds and because Plaintiff has failed to exhaust his administrative remedies. *See* Decision and Order, p. 17.

Plaintiff's other attempted "fix" (for both his First and Fourth instances) is the introduction of a new allegation, which is that Fiduciary failed to prudently invest the FTI Bond Fund and Franklin Total Return fund assets. As a new claim however, this allegation suffers from the same timeliness and exhaustion problems as the new allegations concerning Mr. Rohewetter. But even putting these procedural defects aside, Plaintiff's allegation does not allege protected activity, because the Complaint still does not assert that Fiduciary used its investment decisions to defraud mutual fund shareholders. Instead, Plaintiff's essential allegations remain unchanged from previous versions of the Complaint -- that Defendants, in his opinion, "failed to balance investment return with risk," and engaged in what appears to be the more unpardonable sin -- not following Plaintiff's investment advice. Cplt. 990. As Judge Berman correctly found, such a complaint does *not* make Plaintiff a whistleblower under federal

law. This claim must be dismissed.

**B.      Second Instance**

Plaintiff asserts that in May 2002, Fiduciary's New York office intentionally failed to internally disseminate to Fiduciary's other offices information concerning its decision to liquidate its client's positions in WorldCom bonds after WorldCom's fraudulent activity was uncovered. Cplt. 855-915. As to his alleged "protected activity," Plaintiff claims that he alerted Fiduciary President Bill Yun via e-mail that information concerning the decision to exit the WorldCom position was "withheld from the rest of the firm," which allegedly resulted in "losses to L.A.-ERISA and trust accounts," and that he later suffered negative treatment as a result. Cplt. 868-873.

Judge Berman previously dismissed this claim, on the ground that Plaintiff's facts, as alleged, were insufficient to raise an inference of retaliation, give the lapse in time between Plaintiff's May 2002 email and his March 2003 discharge. Decision and Order, p. 18. In an attempt to avoid the same fate this time around, Plaintiff now asserts, for the first time, that in October 2002, Materasso denied his request to manage "a few" accounts that were being transferred to the New York office from Los Angeles. Cplt. 2249-2460. This is also a new claim that was not presented to OSHA as part of Plaintiff's administrative complaint, and thus, must be dismissed on that basis.

But even if this claim were properly presented, it still fails because Plaintiff again fails to allege that he reported anything that could reasonably be construed as potentially fraudulent conduct to Mr. Yun. Instead, Plaintiff simply parrots the statute, stating in a conclusory fashion that he *currently believes* that the "actors were engaging in fraudulent activities that violated "Section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to *fraud against shareholders*."[10] Cplt. 2310-2313. Despite these pronouncements, nowhere does Plaintiff

---

[10] Plaintiff further alleges that his First, Second and Fourth Whistle-blowing Notices "demonstrate" his belief that "Defendants, acting as pension, employee benefit and fund shareholder fiduciaries were violating ERISA's Prudent Man

state that he believed that Defendants were engaging in a potential violation of securities law with respect to their decision to exit WorldCom (or their alleged decision not to share that information with other Portfolio Managers), or that he communicated such a belief to Mr. Yun or anyone else. Rather, according to Plaintiff's allegations, Plaintiff simply informed Mr. Yun that the New York office had not communicated its decision to exit its clients from their WorldCom positions and that this decision, in his opinion, had resulted in losses to client accounts[11] managed by one particular Portfolio Manager based in Los Angeles. Based on his own allegations, which have been amended multiple times and must be deemed complete, it is apparent that Plaintiff did not characterize this decision one way or another to Yun, and most certainly did not suggest that the New York office was complicit in a scheme to defraud Fiduciary's clients, or more importantly, Franklin's shareholders, which is what is required under SOX. Thus, even if Plaintiff did complain internally about the alleged WorldCom decision – which Fiduciary disputes – such a report would not amount to protected activity as a matter of law.[12]

**B.    Third Instance**

As with his other claims, Plaintiff's Third Instance does not allege facts that could even remotely be construed as protected activity under SOX. Here, Plaintiff asserts the same basic underlying "facts" that form the basis of his federal securities claims -- that he reported a scheme by Defendants to overstate the nature and amount of assets managed on behalf of the U.N. Joint Pension Fund (the "UNJPF"). Cplt. 918-958. As set forth in Section IV, below, Defendants' conduct with respect to its assets under

Standard of Care, ERISA's Diversification Rule, and ERISA's Documents Rule," and that the Second Instance also demonstrated a violation of a general "ethical rule of fair treatment of all customers, including fund shareholders... codified in the CFA Institutes Code of Ethics and Standards of Professional Conduct." Cplt. 2314-2323 (statutory citations omitted); *see also* Cplt. 904-909. In his Decision and Order, Judge Berman reserved judgment on whether violations of these statutes could form the basis of a valid SOX complaint. It is clear on their face, however, that they don't. These rules go to whether pension assets are sufficiently diversified and prudently invested so as to safeguard participants' retirement accounts; even a gross failure to follow these precepts would not amount to fraud.

[11]Here too, Plaintiff adds the allegation that the shareholders of the FTI Bond Fund and Franklin Total Return Fund (two of Franklin's regulated mutual funds) were damaged due to Defendants' alleged misconduct. Cplt. 876-877. Plaintiff does not, however, assert that he communicated this complaint to Mr. Yun or anyone else, nor did he raise this complaint before OSHA.

[12] Consistent with Judge Berman's decision, this claim should also be dismissed because Plaintiff's alleged report and the resulting alleged retaliatory activity (i.e. the "pattern of negative behavior") occurred before the effective date of SOX. Decision and Order, p. 13.

management ("AUM") did not, in fact, constitute a violation of federal securities law.  Leaving aside the

absence of any securities violations, however, Plaintiff's claim still fails, because he again fails to allege

that he provided any information to his managers indicating his belief that the company was engaging in

fraud against shareholders.  Instead, Plaintiff simply alleges that he showed Michael Materasso, his

supervisor, an "important document," which supposedly consisted of a PowerPoint slide listing

Fiduciary's largest clients by AUM.  (A copy of this document is annexed as part of Pl. Exh. M and Exh.

5 to the Feege Dec.)  At the same time, Plaintiff allegedly told Materasso that the UNJPF AUM appeared

to him to be overstated on that document, and followed up with some casual questions about the type of

fee revenue generated on AUM and the type of services that Fiduciary was providing to the UNJPF.  In

particular, Plaintiff said "the fee revenue rate [on the UNJPF account] was well below industry standards"

and "asked [Materasso] why this was the case and for what services the U.N. was paying Fiduciary." Cplt.

¶¶35-937.

        Such innocuous questions cannot be transformed into actionable whistle-blowing.  As a number of

courts construing SOX and other whistle-blower statutes have found, general inquiries such as this do not

amount to protected activity.  *In re Wayde S. Lerbs v. Buca Di Beppo, Inc.*, 2004-SOX-8; *Bechtel Constr.*

*Co. v. Sec'y of Labor*, 50 F.3d 926, 931 (11th Cir. 1995), *Allen v. Stewart Enterprises, Inc.*, 2004 SOX 60-

62.  In this regard, *Lerbs* is particularly instructive.  There, the complainant asked the controller of his

company about certain entries on the company's general ledger, which reclassified a negative cash

account balance to accounts payable. Specifically, when complainant first saw this entry, he "went and

asked [the controller] what it was about, whether it was appropriate, and what was the proper way to list it

on a bank reconciliation.'" *Lerbs*, 2004 Sox 8, p. 12.  Complainant also indicated to the firm's Chief

Information Officer that he "did not think [the accounting method] was right and that it was misleading."

*Id.*  Confronted with these inquiries, the Administrative Law Judge found that they did not amount to

protected activity under SOX, because the questions did not communicate allegations of fraudulent

8

conduct:

> The pertinent case law makes it clear that, in order for the whistleblower to be protected by the Act, the reported information must have a certain degree of specificity. *See generally Bechtel Constr. Co. v. Sec'y of Labor,* 50 F.3d 926, 931 (11th Cir. 1995). Thus, general inquiries do not constitute protected activity. *See id.* Instead, in order to be protected, a whistleblower must state particular *concerns* which, at the very least, reasonably identify a respondent's conduct that the complainant believes to be illegal. *See Id.* In the present case, Complainant's questions to [managers] Skrypek and Motschenbacher concerning the reclassification of the negative cash account balance to accounts payable were simply "general inquiries" and do not constitute protected activity since Complainant never identified particular concerns about Respondent's conduct (failure to disclose a change in accounting practices) that he may have believed was illegal.

*Id.* at 12.[13]

Based on this precedent, it is clear that Plaintiff's off-hand queries to Materasso cannot fairly be construed as a "complaint" or report of fraudulent activity, and Plaintiff does not even allege that they so qualify. Rather, he simply surmises that Materasso took his comments as such, and thus "became uneasy" at Plaintiff's questions, and then jumps to the wholly unsupported conclusion that Materasso became suspicious that Plaintiff had "uncovered this deception," and fired him as a result. Cplt. ¶39.

This is an entirely speculative theory, and does not meet SOX's requirements for protected activity. As OSHA found, Plaintiff's first actual "complaint" concerning this topic occurred in May 2003, when he commenced his OSHA proceedings, after he was discharged. Such belated reporting does not suffice. SOX does not protect employees who simply possess information about unlawful activity, but instead requires them to have done something about it – *i.e.* make an actual report -- as a predicate to federal protection. Allegations of casual questions, followed by the wholly speculative theory that Materasso was "on to him" do not, as a matter of law, rise to protected activity under the SOX. As such, this claim too must be dismissed.

---

[13] For similar reasons, in *Allen v. Stewart Enterprises, Inc.,* 2004 SOX 60-62, the Administrative Law Judge found that an employee's questions about whether her employer was taking steps to bring certain cost recognition journal entries "into compliance" did not amount to a complaint of fraudulent activity, as required by SOX. *Id.* at 87.

III.   **THE THIRD CAUSE OF ACTION FAILS TO STATE A CLAIM UNDER ERISA, AND SHOULD BE DISMISSED**

In his Third Cause of Action, Plaintiff purports to raise claims as an ERISA whistleblower and for retaliation pursuant to ERISA §§ 404 and 510, as well as breach of fiduciary duty claims pursuant to 29 U.S.C. §§ 1104, 1140. In each instance, and as explained more fully below, Plaintiff fails to plead facts required to state causes of action under either statute. His entire Third Cause Action should therefore be dismissed, except for his claim for denial of severance benefits claim asserted under ERISA § 510..

   A.   **Plaintiff Does Not Have Standing to Assert An ERISA § 510 Whistleblower Claim Because He Does NOT Plead That He Was A Participant, Beneficiary or Fiduciary.**

ERISA § 510 bars any person from discriminating against others "because he has given information or testified or is about to testify in any inquiry or proceeding relating to the [Act.] 29 U.S.C. § 1140; *Anderson v. Electronic Data Sys. Corp.,* 11 F.3d 1311, 1314-15 (5th Cir.); cert. denied, 513 U.S. 808 (1994); *Hashimoto v. Bank of Hawaii,* 999 F.2d 408, 411 (9th Cir. 1993*).* This provision was designed to encourage individuals with knowledge of potential ERISA violations to come forward, so that any violations can be addressed. As with other remedial statutes, § 510 prohibits employers from retaliating against those who provide such information or testimony, to the extent it is given in connection with "any inquiry or proceeding related to [ERISA]." At issue in the present case is whether Plaintiff has standing to bring a whistleblower claim, and if he does, whether the Complaint alleges adequately that Plaintiff disclosed information pertaining to possible ERISA violations as part of his participation in an "inquiry" or "proceeding."

1.   *Plaintiff Has No Standing to Bring An Enforcement Action Relating to Accounts for Which He Was Not A Participant, Beneficiary or Fiduciary.* Although it is difficult to tell from Plaintiff's pleadings, it appears that Plaintiff's whistleblower claim is based on the complaints referenced above, *i.e.* Fiduciary's allegedly conservative approach to investing client assets. The problem with this theory is

10

simple: to the extent he complained about the handling of client accounts – some of which were benefit plans being managed for institutional clients – Plaintiff was not a Participant in the plans in question or one of the other enumerated persons who are empowered under § 1132 of ERISA to bring a civil enforcement action. That section, which has been specifically incorporated into ERISA § 510, 29 U.S.C. § 1140, under which Plaintiff is suing, provides that a civil action may only be brought by a Plan Participant, Beneficiary, or Fiduciary, or the Secretary of Labor. *See* 29 U.S.C. § 1140 ("The provisions of section 1132 of this Title shall be applicable in the enforcement of this section."), 29 U.S.C. § 1132 (1994). The statutory list of potential claimants is exclusive. Because Plaintiff was neither a participant, beneficiary nor fiduciary of any of the allegedly mishandled client accounts (nor does he even so allege), he has no standing to bring this claim, which must be dismissed.

**2.      *Plaintiff Did Not Raise Claims as Part of an ERISA "Inquiry" Relating to his Own Benefit Plans.*** With respect to Plaintiff's own employee benefit plans, Plaintiff cannot contend that he was a whistleblower, because he does not allege that he provided any information relating to Defendants' concerning those plans, either in connection with any sort of formal or informal "inquiry" or otherwise. Decision and Order, p. 18, *citing Nicholaou v. Horizon Media Inc.*, 402 F.2d 325, 329 (2d Cir. 2005) (finding that an "inquiry" is "something more formal than written or oral complaints made to a supervisor.") Instead, Plaintiff relies solely on his self-styled SOX "whistleblower notices,"[14] on the theory that they do double duty as ERISA whistle-blowing notices as well. However, each of those claims deals with the handling of certain client trust accounts (which he calls ERISA accounts but has not

---

[14] In his First, Second and Fourth Instances, Plaintiff alleges that he voiced concerns about certain unspecified *clients'* "ERISA trust accounts" that were being managed by Fiduciary's Institutional Fixed Income group, and also about the handling of the Fiduciary Total Return Fund and FTI Bond Fund, which were publicly-traded mutual funds operated by Franklin. Plaintiff alleges no facts demonstrating that any of these client accounts were in fact covered by ERISA, which regulates "employee benefit plans," defined as employee welfare benefit and pension benefit plans established by covered employers or employee organizations. 29 U.S.C. § 1002(1) and (3). It is apparent on its face that the publicly traded Total Return and FTI Bond funds are *not* covered ERISA plans, so any alleged of malfeasance concerning these funds could not form the basis of an ERISA whistle-blower suit. For similar reasons, the Third Instance, in which Plaintiff alleges that he raised concerns about the way the UNJPF assets were classified – not how they were managed – also cannot form the basis of an ERISA violation.

asserted any facts establishing that they are indeed covered by ERISA), for which he has no standing --
*not* the management of Plaintiff's own employee benefit plans.   As such, Plaintiff cannot use those
allegations to support his deficient ERISA whistleblower claim.

**B.**   **Plaintiff's Breach of ERISA § 404 Fiduciary Duty Claim Fails Because He Has Not Alleged That The Individual Defendants Are ERISA Fiduciaries.**

In his second attempt to create an ERISA cause of action, Plaintiff alleges that the Individual
Defendants breached their fiduciary duties by causing the Fiduciary TRIO Plan and the Franklin Profit
Sharing Plan to purchase Franklin Stock as part of a plan to prop up the share price while they
simultaneously sold personally-held shares on the open market.   Cplt. 2158-2167.   This claim fails on
several counts.

Most significantly, Plaintiff has not alleged facts showing which, if any, of Individual Defendants
are "fiduciaries," as that term is defined under ERISA.   To pursue claims against an ERISA fiduciary for
purported breaches, Plaintiff must first plead sufficient facts establishing that Defendants are, in fact, Plan
fiduciaries.   Under ERISA, a person qualifies as a fiduciary *only* "to the extent" that he or she:   (1)
exercises discretionary authority over the plan's assets; (2) renders investment advice to an ERISA plan
for a fee; or (3) exercises discretionary control in management of the plan in question.   29 U.S.C. §
1002(21)(A); *Mertens vs. Hewitt Assoc.*, 508 U.S. 48, 255 (1993).   *Only* when fulfilling those defined
functions does an individual or entity become an ERISA fiduciary.   *Lockheed Corp. v. Spink*, 517 U.S.
882, 890 (1996).

In this case, the Complaint fails to allege sufficient facts to state a claim against any of the
Individual Defendants based on their purported fiduciary status.   In particular, while Plaintiff asserts that
the each of the Individual Defendants "owe[s] Fiduciary, Franklin and their respective client participants
fiduciary obligations and duties,"[15] these appear to be generalized fiduciary duties of good faith and fair

---

[15] Cplt. 2092.

dealing, not ERISA-based duties owed to Defendant's employee benefit plans.  With respect to those plans, Plaintiff has not alleged that any of the Individual Defendants hold fiduciary status, nor has he asserted facts that could plausibly establish such status.  As such, the Second Amended Complaint lacks sufficient allegations to establish that any of the Individual Defendants are fiduciaries, and they may not be sued on that basis.

## IV.   PLAINTIFF'S SIXTH CAUSE OF ACTION FAILS TO STATE A CLAIM

Plaintiff's Sixth Cause of Action appears to be a claim for breach of contract, based on Defendants' alleged breach of internal policy statements against retaliation.  Cplt. 2643-2739.  While not entirely clear from the Complaint, it appears that Plaintiff has tried to convert his faulty statutory wrongful termination claim into a viable contract claim.  This attempt too must fail, however, because New York law does not recognize wrongful termination claims based on the contents of employee handbooks and the like.  Moreover, contrary to Plaintiff's assertion, an employer's statements of policy are generally *not* grounds for claims of breach of contract under New York law, except under certain very limited circumstances which do not exist here (such as where an employer has expressly limited its right to discharge at-will and the employee relied on this limitation when accepting or continuing employment). *See Weiner v. McGraw-Hill, Inc.*, 443 N.E.2d 441 (N.Y. 1982); *Sabetay v. Sterling Drug, Inc.*, 506 N.E.2d 919, 922-923 (N.Y. 1987).  Such policies cannot generally be used to create an implied contract of employment, thereby circumventing New York's policy of employment at-will.  *Id.*  As with his other claims, the Court should dismiss this claim as having no basis in law or fact.

## IV.   ALL DISCRIMINATION CLAIMS ARISING BEFORE AUGUST 27, 2001 ARE TIME-BARRED

Under New York State and New York City law, an employee must commence suit within three years of the last discriminatory act. *Tomayo v. City of New York*, 2004 WL 725836, *3 (S.D.N.Y. March 31, 2004).  Therefore, all claims that arose on or before August 27, 2001 -- of which there are several --

are untimely, and must be stricken from the Complaint.

**V.     PLAINTIFF'S SECURITIES FRAUD CLAIMS FAILS TO PLEAD ADEQUATELY ANY OF THE ELEMENTS OF A § 10(B) OR CALIFORNIA CORPORATIONS CODE § 25402 CAUSE OF ACTION**

In his First and Second Causes of Action, Plaintiff attempts to allege fraud in violation of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) *et. seq.;* and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder, and § 25402 of the California Corporations Code ("Corporations Code"). "To maintain a claim under [§ 10(b) and] Rule 10b-5, 'a plaintiff must plead that [i] in connection with the purchase or sale of securities, the defendant, [ii] acting with scienter, [iii] made a false representation or omitted to disclose, [iv] material information and that [v] the plaintiff's reliance on the defendant's action [vi] caused the plaintiff injury.'" *Log on America, Inc. v. Promethean Asset Mgmt. LLC,* 223 F. Supp. 2d 435, 442 (S.D.N.Y 2001)).    Further, FRCP 9(b) requires that fraud, including claims under § 10(b), be pled with particularity, and the Private Securities Litigation Reform Act of 1995 (the "PSLRA") imposed heightened pleading standards for § 10(b) claims. *Novak v. Kabaks,* 126 F.3d 300, 306 (2nd Cir. 2000).

Judge Berman previously dismissed each of these claims on the ground that Plaintiff had not adequately alleged that he was a "purchaser or seller" of Franklin's securities, which is required to confer standing under both federal and California state law.[16]  As demonstrated below, Plaintiff has failed in large part to correct this problem, and he has likewise failed to plead adequately other necessary elements of his securities fraud claim. These claims must therefore be dismissed.

---

[16] Similarly, to maintain a claim under Corporations Code section 25402, a plaintiff must plead that he [i] purchased or sold a security, [ii] from a corporate insider, [iii] in California, and [iv] at a time when the insider had non-public, material knowledge about the issuer of the security. *See* Cal. Corp. Code §§ 25402, 25502.

A.    **Plaintiff Lacks Standing Under Federal And California Law Because He Fails To Plead Allege Misstatements "In Connection With" A Covered Purchase Or Sale**

In *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 737-38 (1975), the Supreme Court held that the "in connection with" language of § 10(b) (*see* 15 U.S.C. § 78j(b)) requires a plaintiff to be *an actual purchaser or seller* of the security. While Plaintiff generally alleges that he "purchased and sold" Franklin (and/or Fiduciary) securities through his claimed participation in employee stock award, employee benefit, and 401(k) plans, these allegations are inadequate for several reasons.[17]

First, despite explicit instruction on what FRCP 9(b) requires as part of the parties' previous motion practice, Plaintiff still does not allege any specific trading dates, share amounts, or even which company issued his stock, as required by FRCP 9(b). *See Parnes v. Gateway 2000, Inc.,* 122 F.3d 539 (8th Cir. 1997) (complaint dismissed where it failed to allege what securities were purchased, who authorized the purchases, or date the purchases took place); *Gross v. Diversified Mortgage Investors,* 431 F. Supp. 1080, 1088 (S.D.N.Y. 1977) (same).[18]  (Although styled as "acquisitions" rather than purchases, Plaintiff's holdings were detailed in Exh. E to the Affirmation of Bruce A. Hubbard In Opposition to Motion to Dismiss, which Plaintiff purports to have incorporated by reference into his Second Amended Complaint; a copy is attached as Exh. 6 to the Feege Dec.)[19]  This schedule identifies an acquisition of 493 shares of stock that were granted to Plaintiff on July 2, 2002 as part of Franklin's Restricted Stock Award, which he sold a week later, on July 10, 2002. In addition, Exhibit E identifies the acquisition of an <u>unspecified</u> number of other Franklin shares, acquired on <u>unspecified</u> dates, for <u>unknown</u> prices,

---

[17] Specifically, Plaintiff alleges that "materially false and misleading statements during the Relevant Period resulted in Plaintiff . . . purchasing or acquiring the Company's common stock . . . at artificially inflated prices" and that "Plaintiff acquired Franklin common stock through Franklin's Employee Restricted Stock Award Plan." Cplt. 1857-1897.

[18] Such specifics are necessary to determine whether claims are timely and also to determine whether other requisite elements of a § 10(b) claim, such as transaction causation and loss causation (discussed *supra*) have been adequately pled.

[19] Cplt. 1936. Although Plaintiff alleges in his Complaint that he has "in his possession a proxy statement containing the registration numbers and total number of Franklin common shares owned by Plaintiff [as well as] brokerage account statements in his name showing the acquisition and disposition of certain Franklin shares, and income tax forms, cancelled checks and documentation from Franklin showing his income tax liability," the only evidence that Plaintiff has offered to establish the elements of his claim is a home-made schedule of alleged "acquisitions" and "dispositions," which was created solely for the purpose of opposing Defendants' previous motion and has now been incorporated into the Complaint.

through his employer-sponsored TRIO plan's investment in the FT Collective Domestic Stock Fund, which is an S & P 500 Index Fund.  Accordingly, except for the July 2nd acquisition and July 10th sale, Plaintiff fails to sufficiently plead the particulars of his alleged purchases and sales, as required under FRCP 9(b).

Second, Judge Berman previously dismissed this claim because Plaintiff had not adequately plead that he was *an actual* purchaser or seller of Franklin stock; he has not corrected this problem on amendment.  Specifically, the only "purchases" alleged (even generally) are the acquisition of 493 shares of Franklin stock granted to Plaintiff through the Company's Restricted Stock Award program, and through the TRIO plan's investment in the FT Collective Domestic Stock Fund, which is an S & P 500 Index Fund, which was invested in Franklin stock by virtue of the fact that the company was a constituent member of the Standard & Poor 500 at the time.  *See* Pl. Exh. E, fn. 2 (Exh. 6 to the Feege Dec.), which has been incorporated by reference at Cplt. ¶36.  As to the latter acquisition through the TRIO plan, it is well settled that a stock acquisition made through an employee benefit plan is inadequate unless Plaintiff pleads an independent, bargained-for exchange in which *Plaintiff himself* made an affirmative investment decision; there is *no* such allegation here with respect to the TRIO plan.[20]  Securities Release No. 33-6188, 19 S.E.C. Docket 465 (1980) (grant of securities pursuant to a stock bonus plan is not a "purchase or sale" because the employees "do not individually bargain to contribute cash or other tangible or definable consideration"); *Compass Group PLC*, SEC No-Action Letter, 1999 WL 311797 (publicly available May 13, 1999) (no purchase occurred "when an employee does not give anything of value for stock other than the continuation of employment nor independently bargains for such stock, such as a stock bonus program that involves the award of stock to employees at no direct cost").  Thus, in no sense did Plaintiff make the requisite investment decision with respect to his TRIO shares.

---

[20] *See Blue Chip Stamps*, 421 U.S. at 730 ("[T]he plaintiff class for purposes of a private damage action under § 10(b) and Rule 10b-5 [is] limited to *actual* purchasers and sellers of securities") (emphasis added); *In re Cendant Corp. Sec. Litig.*, 76 F. Supp. 2d. 539, 545 (D.N.J. 1999) (no claim under § 10(b) based on receipt of options pursuant to employee stock option plan).

Similarly, while Plaintiff stretches to allege that he acquired stock through his voluntary participation in Defendants' retention bonus program, which, he contends, granted cash and stock to "certain employees of Fiduciary"[21] who remained with Fiduciary for a minimum of two years after the Acquisition, Plaintiff has not alleged that he actually came to possess any shares through this program. Cplt. 1947-1994. Far from being a benefit that Plaintiff individually bargained for, Plaintiff's Exhibit L (which has been incorporated by reference into the Complaint at Cplt. 1980 and has been attached to the Feege Dec. as Exh. 7 ) unequivocally states that the Company has "arranged for retention bonuses to be paid *to all active, salaried employees* who have accepted positions with us through October 25, 2000." (emphasis added.) Thus, as Plaintiff's own Exhibit demonstrates, Plaintiff would have been eligible for this benefit as of his first day of employment in September 20, 2000.

The key word, of course, is "eligible, " because Plaintiff does not allege, nor could he, that he actually acquired any Franklin stock as a result of his alleged "decision" to forgo the alleged U.S. Trust offer of employment. By continuing his Fiduciary employment, Plaintiff simply remained eligible to receive a gifted stock award, the first half of which would vest mid-2004 and the second in 2005, contingent upon the employees being actively employed on the date of the stock grants. *See* Pl. Exh. L. Because Plaintiff never acquired this stock – he was long gone by the time the first award would have vested – he cannot use this entirely contingent liability to establish a purchase for his otherwise defective securities fraud claims.

Finally, Plaintiff alleges that even if he is not a legally cognizable "purchaser" of Franklin stock, his status as a "seller" is sufficient to confer standing. Cplt. 1930. This reading of the statute, however, ignores the fact that such a sale must be made "in connection with" with the Defendants' alleged misconduct; put another way, Plaintiff must have relied on Defendants' alleged misstatements in deciding to sell his shares. Here, while Plaintiff alleges that Defendants' "materially false and misleading

---

[21] Cplt. 1971.

statements …resulted in Plaintiff and other shareholders purchasing or acquiring the Company's common stock," he has not alleged that these alleged misstatements resulted in his decision *to sell* this stock, which he must do if he intends to use this sale to gain standing. Cplt. 1863-1865.

Similar problems plague Plaintiff's claim under Corporations Code § 25402, which requires plaintiffs to allege a purchase or sale of a security from an insider in connection with the alleged fraud. Likewise, in order to have standing under § 25402, the sale or purchase must have occurred "in this state," *i.e.,* in California; Plaintiff does not, and cannot, plead that that there was an offer of sale originated in, or a purchase from, California. *Diamond Multimedia Systems, Inc. v. Superior Court,* 968 P.2d 539, 550 (Cal. 1999) (observing that the phrase "in this state" in § 25402 clearly evinced the legislature's intent that the purchase or sale must occur in California). In this regard, the best he can do is to allege that his brokerage company, Charles Schwab & Company, is headquartered in San Francisco. Given Schwab's thousands of outlets throughout the country, however, this allegation tells us nothing about where this transaction in question actually occurred. As such, Plaintiff has met none of California's statutory requirements.

**B.    Plaintiff Fails To Plead Transaction Causation Or Loss Causation**

"It is settled that causation under federal securities laws is two-pronged: a plaintiff must allege both transaction causation, that *but for* the fraudulent statement or omission, the plaintiff would not have entered into the transaction; and loss causation, that the subject of the fraudulent statement or omission was *the cause* of the actual loss suffered." *Castellano v. Young & Rubicam, Inc.,* 257 F.3d 171, 186 (2d Cir. 2001) (emphasis in original). As set forth below, Plaintiff does not meet either prong of this standard.

**1.    Transaction Causation**

Nowhere in his Complaint does Plaintiff even attempt to satisfy the *but for* requirement of transaction causation, which is effectively justifiable reliance. *See generally Steed Finance LDC v.*

*Nomura Sec. Int'l.,* 2004 WL 2072536, *8 (S.D.N.Y. 2004).[22]  Plaintiff's attempt to rely on the fraud on

the market theory[23] is unavailing because it is conclusory, as well as contradicted by other allegations

contained in the Complaint, and is especially ineffective now that Plaintiff appears to be relying on a

covered sale, not a covered purchase.[24]  Of course, if he is relying on a purchase, his allegation that he

"rel[ied] upon the integrity of the market price" is at odds with his allegation that "[a]t the time of [the

alleged] misrepresentations and omissions, Plaintiff had already informed his supervisor and superiors of

the materially false and misleading information."  Cplt. 1845.  Thus, according to Plaintiff's own

pleading, he *knew* the supposed "truth," *yet allegedly still purchased more stock.*  That being the case, the

allegedly misleading statements or omissions, and even the purported "inflated" market price, simply

could not be the *but for* cause of Plaintiff's alleged acquisition or sale.[25]

## 2.  Loss Causation

As the Supreme Court reaffirmed last Spring, loss causation, which is a causal connection between

the material misrepresentation and Plaintiff's alleged loss, is a necessary element of a § 10(b) cause of

action.  *Dura Pharmaceuticals, Inc. v. Broudo*, 125 S.Ct. 1627, 1631, 544 U.S. __, No. 03-932 (April 19,

2005).  This requirement is also codified in the PSLRA, which provides that "in any private action arising

under this chapter, the plaintiff shall have the burden of proving that the act or omission of the defendant

alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C.

§ 78u-4(b)(4).

---

[22] Similarly, Corporations Code § 25502 specifically provides that a defendant is not liable if it can show that the "plaintiff knew the [allegedly materially misleading] information or that the plaintiff would have purchased or sold at the same price even if the information had been revealed to him."  As established above, the Complaint demonstrates that plaintiff was aware of the alleged misrepresentations or omissions.  Thus, the § 25502 defense that "plaintiff knew the information" is established, by Plaintiff's admission.

[23] Cplt. 1408-1431.

[24] *See, e.g., Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1095 (2d Cir. 1995) (sustaining dismissal where "attenuated allegations" "are contradicted both by more specific allegations in the complaint and by facts of which [the court] may take judicial notice").

[25] *See Bennett v. United States Trust Co. of New York*, 770 F.2d 308, 313 (2d Cir. 1985); *Jones v. Intelli-Check, Inc.*, 274 F. Supp.2d 615, 633 (D.N.J. 2003) ("if plaintiffs were aware of defendants' fraud . . . then as a matter of law they are unable to show reasonable reliance, and their claims necessarily fail"); *see also Griffin v. McNiff*, 744 F. Supp. 1237, 1253 (S.D.N.Y. 1990), *aff'd*, 996 F.2d 303 (2d Cir. 1993).

As to what sort of "loss" must be pled at the outset, it is well-settled in the Second Circuit that a plaintiff *must* allege that (a) he actually purchased shares at an inflated price, (b) which now have a lower market value or were sold at a loss, (c) as a result of corrective disclosure of the truth. *See In re Merrill Lynch Tyco Research Sec. Litig.,* 2004 WL 305809, *2 (S.D.N.Y. 2004) (granting motion to dismiss and holding that plaintiffs must allege something more than "mere price inflation or purchase-time value disparity" to plead loss causation).

This understanding of loss of causation was confirmed last Spring, while Defendants' initial motion to dismiss was still pending, when a unanimous U.S. Supreme Court held that private plaintiffs pursuing Exchange Act fraud claims must plead and prove more than just price inflation at the time of purchase in order to satisfy the "loss causation" element of such claims. *Dura Pharmaceuticals, Inc.*, 125 S.Ct. at 1631. In so doing, the Court resolved a split among the Circuits, overruling precedent from other jurisdictions, which had held that allegations of purchase price inflation alone are sufficient to show loss causation.

Notwithstanding this unequivocal holding, in Plaintiff's Complaint, which was filed months after the Court's decision in *Dura* was issued (and after Defendants placed Plaintiff's counsel on notice of its holding), he *still* alleges that "loss causation in the traditional sense ... is not the appropriate measure here," Cplt. 2062, citing Franklin's "refus[al] to admit to any wrongdoing in the instant case, which has caused the shares to remain artificially inflated." Cplt. 2082-2083. But, as Justice Breyer held in *Dura*, this theory is simply "wrong." *Id.* at 1632. ("In our view, *this statement of the law is wrong.* Normally, in cases such as this one (*i.e.*, fraud-on-the-market cases), *an inflated purchase price will not itself constitute or proximately cause the relevant economic loss.*") (emphases added, internal citations omitted.) Applying these standards, the Supreme Court found that the Dura plaintiffs' "lengthy" complaint contained only one statement describing their losses, which vaguely alleged that the plaintiffs "paid artificially inflated prices for *Dura*'s securities." Holding that an "artificially inflated purchase price" is not itself a relevant

economic loss, the Court found that more is needed to state a claim under FRCP 12(b)(6) and 9(b). *Id.* at 1632.

Plaintiff cannot meet the standard articulated by the Court. Unlike the *Dura* plaintiffs, Plaintiff was gifted his allegedly inflated shares, and thus <u>enjoyed a gain</u>, <u>not a loss of any kind</u>. More significantly, however, even if Plaintiff could plausibly claim a true loss based on his payment of taxes, it still would not amount to loss causation under *Dura* and existing precedent from the Second Circuit, because there is no claim that there has been a market price decline as a result of any corrective disclosure of the truth or that Plaintiff otherwise suffered a loss that was causally connected to Defendants' alleged misdeeds. *See In re Merrill Lynch Tyco Research Sec. Litig.*, 2004 WL 305809, *2 (S.D.N.Y. 2004). To the contrary, according to Plaintiff, even today Franklin's shares "remain artificially inflated" -- despite the passage of more than a year since Plaintiff's allegations were made public record. Accordingly, his claims, like those in *Dura*, must be dismissed for failing to allege the required element of loss causation.

### C.   Plaintiff Fails To Plead Why The Statements At Issue Were "Misleading"

The heightened pleading requirements under the PSLRA require Plaintiff to "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). *See Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004). In addition, *each* defendant must be tied to one or more specific misstatements or omissions, as discussed below, something Plaintiff has failed to do with respect to most of the Individual Defendants.

In the present case, Plaintiff fails to specify with the requisite particularity why most of the statements that he relies on were, in fact, "misleading." For example, Plaintiff alleges that the warranty in the acquisition agreement between Franklin and Fiduciary (and not Plaintiff), which stated that no material misrepresentations were made in connection with the Acquisition, was itself misleading. Cplt. 276-299. Plaintiff further alleges that optimistic statements made by Defendants concerning the then-prospective acquisition were "false" when made. Cplt. 406(f). Not only is there no allegation that such

forward-looking statements actually proved to be false, it is also well-established that corporate officers are not "required to take a gloomy, fearful or defeatist view of the future; subject to what current data indicates, they can be expected to be confident about their stewardship and the prospects of the business that they manage." *See Rombach*, 355 F.3d at 174.

Finally, even with regard to Franklin's statements regarding its treatment of AUM, Plaintiff asserts generally that "in every month from April 2001 to the present, Franklin has distorted and overstated its AUM in its month-end assets under management announcements to its shareholders, the SEC and the investing public." Cplt. 460-462. From what Defendants can piece together from the Complaint, Plaintiff's theory appears to be that the inclusion of the UNJPF assets in AUM made the AUM disclosures misleading because the contract between Fiduciary and the UNJPF allegedly does not provide for Fiduciary to have discretionary investment authority. Cplt. 455-710. Based on this "fact" and the definition of "investment advisory contract in the Investment Advisers Act of 1940, 15 U.S.C. § 80b-2(a)(ii)," Plaintiff apparently has concluded that the U.N. assets do not qualify as AUM and should not have been classified as such by Defendants. *Id.*

Such reasoning is fatally defective, as a matter of law, because Plaintiff ignores the definition of "assets under management" under the Investment Advisers Act of 1940, [26] *see* 15 U.S.C. § 80b-3a(2), and the Investment Adviser's registration form, which provides detailed guidance on how to classify "assets under management." *See* SEC Form ADV, 17 C.F.R. 279.1.[27] In particular, "assets under management" is defined as the "securities portfolio with respect to which an investment adviser provides continuous and regular supervisory or management services." *See* 15 U.S.C. § 80b-3a. In relevant part, Form ADV

---

[26] Plaintiff does not allege, nor could he, that either Franklin or Fiduciary is, or ever was, an "Investment Adviser" subject to the Investment Advisers Act. As a registered bank holding company under the Bank Holding Company Act of 1956, Franklin is exempt from registration under the Investment Advisers Act. *See* 15 U.S.C. § 80b-2(a)(11)(A). The same exemption applies to Fiduciary, which is registered as a bank under the laws of New York and a financial holding company under the Gramm-Leach-Bliiley Act. Cplt. 161-162

[27] Neither Form ADV nor the Instructions accompanying it are published in the Code of Federal Regulations; rather, they can be found on the SEC website at http://www.sec.gov/about/forms/formadv.pdf.

22

provides that "continuous and regular supervisory or management services" means that the adviser has either: (1) discretionary authority over the account to choose investments and execute trades on behalf of the client; **or** (2) does *not* have discretionary authority, but has an "ongoing responsibility to select or make recommendations [on securities]. . . based upon the needs of the client . . . and, if such recommendations are accepted by the client, [the adviser is] responsible for arranging or effecting the [transaction]." *See* Instructions to Form ADV, Part 1A, Item 5(b)(3) (located at http://www.sec.gov/about/forms/formadv.pdf) Thus, Plaintiff's focus on the alleged absence of discretion over the U.N. account is misdirected, because discretionary authority is only one alternative test for determining which assets to include in AUM. Under the guidance above, with which Plaintiff should be familiar, Franklin's inclusion of the UNJPF assets in its AUM was entirely appropriate.[28]

### D.   Plaintiff's Securities Claims Fails To Allege Scienter As To Any Defendant

Scienter is an essential element of a § 10(b) and California Corporations Code claim.[29]  *Log on America*, 223 F. Supp. 2d at 442.  Here, Plaintiff attempts – poorly – to establish this element of his claim through the actions of the Individual Defendants.  Presumably, this is because scienter can only be pled by reference to the state of mind of those individuals acting on behalf of the corporation.  *See In re WorldCom, Inc. Sec. Litig.,* 2005 WL 89395, *21 (S.D.N.Y. Jan. 18, 2005).  ("It is a fundamental principle that '[a] corporation can only act through its employees and agents'").  As set forth below, however, Plaintiff has alleged very little in the way of specific conduct by the Individual Defendants, which could establish scienter, either individually or on behalf of the Corporate Defendants.

FRCP 9(b) requires that, "[i]n all averments of fraud . . . , the circumstances constituting fraud . . .

---

[28] Even assuming, *arguendo*, that Plaintiff adequately pled that one or more AUM statements were somehow "misleading" (which he did not), he failed to plead that any such statements were "material."

[29] An express element of a Corporations Code § 25402 claim is that the defendant trades on a security at a time when he "*knows* material information about the issuer which would significantly affect the market price of [the] security . . ." which is not intended to be public information (emphasis added).  Because Plaintiff does not allege sufficiently that the Individual Defendants knew information that was not intended to be public information, he fails to plead the requisite level of scienter necessary to establish liability under § 25402 and his claim should be dismissed.

shall be stated with particularity." The PSLRA provides that a complaint "shall, with respect to each act or omission alleged to violate this title, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2); *Novak*, 216 F.3d at 307; *Carter-Wallace*, 220 F.3d at 39. For both purposes, "[t]he requisite 'strong inference' of fraud may be established either (a) by alleging facts showing that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Novak*, 216 F.3d at 307; *Carter-Wallace*, 220 F.3d at 39. Specific *facts* concerning each of these elements are required to adequately plead fraud -- "[s]peculation and conclusory allegations" of scienter will not suffice. *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 813 (2d Cir. 1996); *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 52 (2d Cir. 1995). Here, speculation and conclusory allegations are the twin mainstays of Plaintiff's Complaint.

Notwithstanding these specific requirements, Plaintiff relies on the generic group pleading doctrine to plead a connection between certain of the Individual Defendants, Biggs, Flanagan, Gregory Johnson, Materasso, and Yun, and the alleged misstatements issued by Franklin.[30] Although the Second Circuit has not addressed this issue, numerous other courts within this district and without have held that the group pleading doctrine was eliminated by the heightened pleading requirements of the PSLRA.[31]

Likewise, Plaintiff's allegations of scienter are inadequate as to the remaining individual defendants Tatlock and Charles Johnson (as well as the Corporate Defendants) because a plaintiff must allege, in conformity with the dictates of the PSLRA, that each individual defendant made the statement at issue with scienter. As set forth below, Plaintiff does not come close.

---

[30] Under the group pleading doctrine, a plaintiff relies on a presumption that statements in a company's annual report, press release or other group-published information are the collective work of the individual defendants who are "clearly cognizable corporate insiders with active daily roles in the relevant companies or transactions." *See Jordan (Bermuda) Inv. Co. v. Hunter Green Invs. Ltd.,* 205 F. Supp. 2d 243, 253 (S.D.N.Y. 2002).

[31] *See, e.g., In re Cross Media Marketing Corp. Sec. Litig.,* 314 F. Supp. 2d 256, 261 (S.D.N.Y. 2004); *Bond Opportunity Fund v. Unilab Corp.,* 2003 WL 21058251, at *4 (S.D.N.Y. May 12, 2003) ("the PSLRA has eliminated the 'group pleading' doctrine and thus '[p]laintiffs may not impute knowledge to the individual defendants solely on the basis of the positions they held'"), *aff'd by unpublished summary order,* 87 Fed. Appx. 772 (2d Cir. 2004).

24

First, Plaintiff has made no showing of conscious misbehavior or recklessness. Specifically, the most that can be inferred from the Complaint is that Plaintiff and the Individual Defendants disagree about what assets can be included in AUM. That is not conscious misbehavior or recklessness.

Second, Plaintiff does not adequately allege that the Individual Defendants had any motive to commit fraud. Motive is established if the plaintiff alleges "concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged." *See In re Flag Telecom Holdings, Ltd. Sec. Litig.,* 308 F. Supp. 2d 249, 270 (S.D.N.Y. 2004). Plaintiff attempts to establish motive through the alleged sale of inflated stock by the Individual Defendants. Such pleading, however, is insufficient since there are no allegations that their stock activity was "suspicious" or "unusual" in either amount or timing. *See Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 55 (2d Cir. 1995) (plaintiff must prove that trading was "unusual"); *In re Oxford Health Plans, Inc.,* 187 F.R.D. 133 (S.D.N.Y. 1999) ("Insider sales . . . may be evidence of scienter if the trades are unusual or suspicious"). Indeed, as to defendants Materasso, Charles B. Johnson, Gregory E. Johnson, and Flanagan, Plaintiff fails to plead *any* trading in Franklin stock prior to 2003. *See In re Carter-Wallace, Inc. Sec. Litig.,* 1999 WL 102971 (S.D.N.Y. 1999) (plaintiffs did not plead scienter where complaint only made conclusory allegations that defendants were motivated to increase stock price rise but did not sell any stock).

Further, with respect to defendants Biggs and Yun, the only allegation of stock sales is the exchange of Fiduciary stock resulting from the merger with Franklin. Cplt. 1117-1118. At no point, however, does Plaintiff plead that either Biggs or Yun sold any Franklin stock during any other part of the "Relevant Period," and therefore he cannot establish any continuing motive. In addition, Plaintiff does not allege that they had the opportunity to control Franklin's AUM disclosures.

Finally, under established precedent, defendant Tatlock's sale of 15% of her Franklin stock shortly after the acquisition and periodic sales throughout the "Relevant Period" do not qualify as unusual or

suspicious given that she was selling Franklin stock she received in the merger.[32]   Moreover, Plaintiffs'

chart detailing Tatlock's sales (Cplt. 1182 demonstrates that Tatlock also made periodic *purchases* of

Franklin stock throughout the "Relevant Period."   Thus, Plaintiff's own pleading establishes that

Tatlock's sales were not suspicious.

### E.      Plaintiff's Claims For Any §10(b) And § 25402 Violations Are Untimely

The statute of limitations governing § 10(b) claims was amended by SOX, 28 U.S.C. § 1658,

which states in relevant part:

> [A] private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in
> contravention of a regulatory requirement concerning the securities laws ... may be brought not
> later than the *earlier* of (1) 2 years after the discovery of the facts constituting the violation; or (2)
> 5 years after such violation. (emphasis added).

Therefore, any alleged § 10(b) violation occurring more than two years before Plaintiff filed his initial

complaint is untimely if he knew prior to that two-year period "of the facts constituting the violation."

That is clearly the case here.

While Plaintiff alleges that he did not become aware, until March 2003, that Franklin allegedly

was improperly including the assets of the U.N. account in its calculation of AUM (Cplt. 918), this is

disingenuous pleading because other allegations demonstrate that Plaintiff was aware of this alleged

practice *in early 2001*.   Cplt. 784-796.   Plaintiff pleads that, on March 19, 2001, he informed his

supervisors that he suspected that fraud was occurring with respect to reported AUM and that he would be

obligated as a Chartered Financial Analyst ("CFA") *to report* such fraud.   *Id.* 797.   Thus, based on his

own pleading, Plaintiff had knowledge of the alleged fraud in early 2001, yet did not directly raise this

---

[32] *See e.g., Rothman*, 220 F.3d at 95 (affirming dismissal of § 10(b) claim and holding that sales of stock accounting for nearly 10% of defendants' individual holdings at the time of IPO were not "unusual"); *Acito*, 47 F.3d at 55 (holding that sale by defendant of 11% of stock holdings where no other defendant sold shares was insufficient to establish scienter); *Southland Sec. Corp.*, 365 F.3d 353 (5th Cir. 2004); *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027 (9th Cir. 2002) (holding that trades were not suspicious as "officers of publicly traded companies commonly make stock transactions following the public release of quarterly earnings and related financial disclosures"); *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1093-1096 (9th Cir. 2002) (holding that sales representing 13% to 74% of stock holdings over a 15 month period were not "unusual" or "suspicious" where there was no evidence that the sales were "calculated to maximize the personal benefit from undisclosed inside information").

issue with his superiors during the intervening *three year*s, or in connection with his discharge.[33]  Thus,

his failure to bring a complaint until August 27, 2004 time-bars any federal securities claim[34] he may have

had for alleged misrepresentations made prior to August 27, 2002.

As a consequence of the foregoing, Plaintiff had only two years from any purchase or sale to file a

complaint, which means his § 10(b) claims are time-barred to the extent of any purchases or sales prior to

August 27, 2002 -- two years before he commenced this action.[35]

## VII.   PLAINTIFF IS NOT ENTITLED TO A JURY ON HIS ERISA OR HIS SOX CLAIMS

### A.   ERISA Section 510

As noted above, Plaintiff continues to allege that he was terminated in violation of ERISA Section

510, 29 U.S.C. § 1140. Cplt. 1793-97. Although Plaintiff has demanded a jury trial on these and other

claims, this demand must be struck, as jury trials are unavailable for ERISA claims.

This is not a contentious area of the law.  In *Sullivan v. LTV Aerospace and Defense Co.*, 82 F.3d

1251 (2d Cir. 1995), the Second Circuit joined eight of its sister circuits in concluding that there was no

right to a jury trial for benefit claims brought under ERISA.  *Id.* at 1258-59.  *See, e.g., Borst v. Chevron

Corp.*, 36 F.3d 1308, 1323-24 (5th Cir. 1994), *cert. denied*, 115 S.Ct. 1699 (1995); *Cox v. Keystone

Carbon Co.*, 894 F.2d 647, 649-50 (3d Cir. 1990), cert. denied, 498 U.S. 811 (1990).

A year later, this court extended *Sullivan's* holding to include claims under ERISA Section 510,

under which Plaintiff proceeds.  *Resner v. ARC Mills, Inc.*, C.A. No. 95-Civ. 2924 (1996 WL 554571

---

[33] Even assuming, *arguendo*, that such allegations do not establish *actual* knowledge in early 2001, once an investor of ordinary intelligence is placed on notice that it is probable that he has been defrauded, he has a duty to inquire further with knowledge imputed to the investor who does not make such an inquiry. *See Newman v. Warnaco Group, Inc.*, 335 F.3d 187, 193 (2d Cir. 2003).

[34] Likewise, § 25506 of the California Corporations Code states in relevant part:
> *[n]o action shall be maintained to enforce any liability created under §... 25502 ... <u>unless brought before the expiration</u> of [(a)] four years after the act or transaction constituting the violation or [(b)] the expiration of <u>one year after the discovery by the plaintiff of the facts constituting the violation</u>, whichever shall first expire. (Emphasis supplied.)*

Because, as discussed above, Plaintiff discovered the fraud in early 2001, his failure to bring a complaint until August 27, 2004 time-bars any state securities claim he may have had for alleged misrepresentations made prior to August 27, 2003.

[35] Thus, any claims relating to the 2000 merger of Franklin and Fiduciary, or based on the purchase or sale of Fiduciary stock pre-merger, are also time-barred.

(S.D.N.Y. Sept. 30, 1996). Given that ERISA Section 510 claims are enforced exclusively through the remedies set forth in ERISA Section 502, 29 U.S.C. § 1132(a)(3), for which the U.S. Supreme Court previously concluded that there was no jury right,[36] the Court was bound to conclude that a jury trial is also not available for ERISA Section 510 claims; this Court must reach the same decision here.[37]

## B.    ERISA Section 404

In addition to his Section 510 claims, Plaintiff also asserts that Defendants have breached their fiduciary duty to him as a participant in the Fiduciary 401(k) Plan (the "TRIO" Plan). Cplt. 1785-1880. As with his § 510 claim, the majority of decisions in this court and elsewhere have concluded that there is no right to a jury trial in claims for breach of fiduciary duty, because those claims are imbued with the law of trusts and are inherently equitable in nature. *See Katsaros v. Cody*, 744 F.2d 270, 278-79 (2d Cir. 1984); *Diduck v. Kaszycki & Sons Contractors, Inc.*, 737 F. Supp. 808, 811 (S.D.N.Y. 1990); *Raff v. Travelers Insurance Co.*, C.A. No. 7673 (BSJ), 1996 WL 154171 (S.D.N.Y. Apr. 30, 1996); *Pereira v. Cogan, C.A.* No. 00-CV-619, 2002 WL 989460 (S.D.N.Y. May 10, 2002).

In the only decision of this court holding to the contrary, *Bona v. Barasch et al.*, C.A. No. 1-CV-2289, 2003 WL 1395932 (Mar. 20, 2003), the court found a right to a jury trial because it expressly concluded that the Plaintiffs were in fact seeking legal – rather than equitable – relief for the breaches of fiduciary duty alleged. In particular, the court noted that the relief was legal (damages) rather than equitable (restitution) because the defendants never actually possessed funds which the Plaintiffs were seeking to recover.

In this case, however, restitution is exactly what Plaintiff is seeking. The essence of his breach of fiduciary duty claim is that Defendants instituted a stock repurchase program to artificially prop up the price of Franklin stock (some of which he alleges was owned by the Plan) so that they "could

---

[36] *Mertens v. Hewitt Associates*, 113 S. Ct. 2063, 2069 (1993).

[37] This court's decision to the contrary in *Vincinanzo v. Brunschwig & Fils, Inc.*, 739 F. Supp. 882 (S.D.N.Y. 1990), predates both the Second Circuit's decision in *Sullivan* and the Supreme Court's decision in *Mertens*. As such, *Vicinanzo* no longer represents good law, and Plaintiff is not entitled to a jury trial on his ERISA Section 510 claims for retaliatory discharge.

simultaneously dispose of millions of dollars worth of their personally held stock in the open market." Cplt. 1854-63. Plaintiff's allegations, and his attempt to undo these transactions on his own behalf, are the classic example of a claim for restitution – he is seeking to recover the allegedly ill-gotten gains of Defendants. As such, to the extent that this claim is not dismissed, his claim would be one for restitution. A claim for restitution under Section 502(a)(2) of ERISA must be tried to the court, and not to a jury. *Raff*, slip op. at 1-2. Plaintiff is therefore not entitled to a jury on his ERISA breach of fiduciary duty claims.

### C.    SOX

The rationale discussed above with respect to ERISA claims applies with equal force to Plaintiff's SOX claims, for which no jury right exists. *Murray v. TXU Corp.*, 2005 U.S. Dist. LEXIS 10945 (N.D. Tex. June 7, 2005.) As the court found in *Murray* -- the first federal court decision to rule on the scope of relief available under SOX -- because SOX does not explicitly provide for jury trials, nor does it provide for legal remedies,[38] SOX claims must be tried to the bench.

In *Murray*, the plaintiff sought compensation for "special damages" due to alleged damage to his reputation, exemplary or punitive damages, and a trial before a federal jury. In so doing, the Plaintiff argued that special and punitive damages were available, based on a textual reading of SOX and its legislative history. The court rejected all three arguments.

Regarding the claim for damages, the court noted that SOX does not explicitly provide for a jury trial – indeed, there is no reference to juries contained in the statutory text. *Murray*, at \*3. This holding required the court to next examine the nature of the relief requested by the plaintiff. Thus, the court noted SOX provides, in relevant part, "compensation for any special damages sustained as a result of discrimination, including litigation costs, expert witness fees, and reasonable attorney fees." This

---

[38] FRCP 38 preserves the "right of trial by jury as declared by the Seventh Amendment . . . or as given by a statute of the United States." Historically, this has been interpreted to mean that a jury is available only for actions where legal rights and remedies are sought. *GTFM, LLC v. TKN Sales, Inc.*, 257 F.3d 235, 241 (2d Cir. 2001); *Daisy Group, Ltd. v. Newport News, Inc.*, 999 F. Supp. 548, 550 (S.D.N.Y. 1998).

language compelled the court to reject the Plaintiff's contention that the phrase "special damages" includes legal claims for reputational injury and exemplary damages. To the contrary, the court observed that the plain language of the Act *only* provides for compensatory damages, such as reinstatement, back pay, litigation costs, expert witness and attorneys' fees. *Id.*  These are the same remedies that were provided for under Title VII prior to the 1991 amendments, which did not contain a right to a jury trial. Under the pre-1991 version of Title VII, a plaintiff seeking a monetary award for retaliation claims could recover *only* back pay and front pay, which historically have been recognized as equitable relief. Accordingly, until Congress explicitly provided a right to a jury trial as part of the 1991 amendments, all Title VII claims were tried to the bench. *Lehman v. Nakshian*, 453 U.S. 156, 164 (1981); *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147 (2d Cir. 2001).  Finding that Congress could have provided an analogous right as part of SOX's whistleblower provisions if it intended to do so, the court was constrained to find that no such right exists.

Here, Plaintiff seeks only back pay, front pay, and restitution of lost benefits, all of which are equitable in nature and do not confer a right to a jury. Indeed, he has not sought any relief that could even arguably be construed as legal in nature. That being the case, this isn't even a close call -- the Court should follow the *Murray* court's sound reasoning and strike Plaintiff jury demand.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court dismiss Plaintiff's First through Fourth Causes Action, as well as the Seventh Cause of Action, and strike all claims of race and color discrimination asserted under the Fifth Cause of Action that arose on or before August 27, 2001.

Dated: New York, New York
      October 4, 2005

**LITTLER MENDELSON, P.C.**

By: _____

    Christina L. Feege (CLF1474)
    A. Michael Weber (AMW8760)
    Attorneys for Defendants
    885 Third Avenue, 16th Floor
    New York, New York 10022.4834
    212.583.9600
    cfeege@littler.com

31

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GREGORY A. FRASER,

               Plaintiff,

-against-

FIDUCIARY TRUST COMPANY
INTERNATIONAL, FRANKLIN RESOURCES
INC., MICHAEL MATERASSO, JEREMY H.
BIGGS, WILLIAM Y. YUN, CHARLES B.
JOHNSON, ANNE M. TATLOCK, GREGORY E.
JOHNSON AND MARTIN L. FLANAGAN,

               Defendants.

**ECF CASE**

CIVIL ACTION NO.: 04 CV 06958
(PAC)(GWG)

**CERTIFICATE OF SERVICE**

       I hereby certify that on October 4, 2005, I electronically filed the foregoing with the Clerk of the

District Court using the CM/ECF systems, which sent notification of such filing to the following:

                         Bruce A. Hubbard, Esq.
                         BRUCE A. HUBBARD, P.C.
                         Attorney for Plaintiff
                         800 Third Avenue - 12th Floor
                         New York, New York 10022-7601
                         (212) 223-9700
                         (212) 752-8881 Fax
                         bruceahubbardpc@msn.com

And, I hereby certify that I have mailed by the United States Postal Service the document to the following

non-CM/ECF Participants:

                                     /S/Christina L. Feege